**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MICHAEL BEARD and<br>M&B SERVICES INCORPORATED,<br><br>Plaintiffs,<br><br>v.<br><br>BRIAN WHITTAKER, *et al.*,<br><br>Defendants. | No. 4:25-CV-01427<br>(Chief Judge Brann) |

# MEMORANDUM OPINION

**OCTOBER 30, 2026**

On December 31, 2024, Plaintiffs Michael Beard ("Beard") and M&B Services Incorporated ("M&B") brought a five-count complaint against two individual defendants, Brian Whittaker ("Whittaker") and Andrew Weitkamp ("Weitkamp").[1] Plaintiffs also name two corporate defendants, BW Industrial LLC ("BWI") and Starfire Services LLC ("Starfire"), and various unknown individuals and corporations.[2] While originally brought in the United States District Court for the District of Arizona, the case was transferred to this Court on August 1, 2025.[3]

On April 20, 2026, Defendant Starfire filed a motion to stay or alternatively dismiss for failure to state a claim.[4] On June 10, 2026, Defendant Andrew Weitkamp

---

1 Doc. 1.
2 *Id.*
3 *Id.*; Doc. 23.
4 Doc. 48.

filed a similar motion.[5] Both motions have been fully briefed and are ripe for disposition. For the reasons that follow, the motions are denied.

## I. FACTUAL BACKGROUND

The Court accepts these facts as true for the purposes of the Defendants' motions to dismiss. In 2009, Plaintiff Michael Beard and Brian Weitkamp—Defendant Andrew Weitkamp's brother—created M&B Services, Inc. ("M&B"), incorporating their new business in Arizona.[6] Each owned a 50% interest in the company.[7] M&B maintained and reconstructed concrete processing plants for over a decade, with each job taking several weeks and requiring hundreds of laborers.[8] On average, M&B reconditioned eight to ten concrete processing plants every year.[9] M&B was successful, grossing millions of dollars in revenue and net profits.[10]

In 2021, Brian Weitkamp expressed an interest in purchasing Beard's 50% share of M&B.[11] In October 2021, Beard agreed to sell his share to Brian Weitkamp on the assumption that M&B was valued at $9 million.[12] The parties agreed to finalize the deal by the end of that year and for Beard to cease his work for M&B notwithstanding emergency consultations or travel.[13] However, despite months of

---

5 Doc. 60.
6 Doc. 1, at 3.
7 *Id.*
8 *Id.* at 3-4.
9 *Id.* at 4.
10 *Id.*
11 *Id.* at 5.
12 *Id.*
13 *Id.*

negotiations and Beard's cessation of performance in January 2022, the parties failed to sign a formal purchase agreement.[14] In April 2022, negotiations were paused pending "operational challenges" within M&B.[15]

The parties remained in this position until November,[16] when Brian Weitkamp declared his intention to step away from M&B as of January 1, 2023.[17] Beard had two options: buy out Brian Weitkamp's interest or agree to dissolution and liquidation.[18] For the remainder of 2022, Beard attempted to find a third-party buyer.[19] He was unsuccessful.

Unbeknownst to Beard, Brian Weitkamp, along with Defendants Andrew Weitkamp and Brian Whittaker ("Whittaker"), formed Defendant BW Industrial LLC ("BWI") during this time.[20] Both Andrew Weitkamp and Whittaker were "key employee[s]" of M&B when they created this new company.[21] Brian and Andrew Weitkamp also formed Defendant Starfire Services, LLC ("Starfire") around the same time.[22] Between BWI, Starfire, and others, Beard alleges a coordinated campaign intended to render M&B worthless. In brief, BWI provided essentially the

---

[14] *Id.*
[15] *Id.*
[16] *Id.* at 6.
[17] *Id.*
[18] *Id.*
[19] *Id.* at 6-7.
[20] *Id.*
[21] *Id.*
[22] *Id.*

same services as M&B.[23] Starfire provided consulting services to BWI, and BWI bid on concrete processing plants in need of annual reconditioning.[24] M&B would bid on the same plants. Then, Defendants would use their positions at M&B to submit inflated bids, in turn making BWI's bids more appealing.[25] Defendants would further leverage their affiliation with M&B to assuage customers concerned with engaging a new, unknown company—BWI—for a highly technical and complicated job.[26]

The effects on M&B were catastrophic. M&B's estimated value fell from a sum of at least $8 million to its liquidation value.[27] Of course, by essentially transferring all corporate assets to BWI, Brian Weitkamp no longer needed to purchase Beard's stake in M&B. Beard alleges this was the true purpose of BWI and Starfire.[28]

On July 24, 2023, Beard filed a lawsuit in Arizona state court against Weitkamp and others, later amending to include M&B as a plaintiff.[29] Then on December 31, 2024, Beard filed the instant five-count complaint in the District of Arizona.[30] Beard pursues claims of (1) tortious interference as to BWI, Starfire, and Whitaker; (2) fraudulent transfer as to BWI; (3) conversion as to BWI; (4) civil

---

23 *Id*. at 7.
24 *Id*. at 9.
25 *Id*. at 7.
26 *Id*.
27 *Id*. at 9.
28 *Id*.
29 *See* Doc. 26, Ex. 3.
30 *See* Doc. 1.

conspiracy as to all Defendants; and (5) unjust enrichment as to BWI, Starfire, and Whitaker.[31] The District of Arizona ultimately transferred this matter to this Court.[32] Before the Court are two motions: first, Defendant Starfire's motion to stay the action or alternatively dismiss Beard's tortious interference, civil conspiracy, and unjust enrichment claims.[33] Second, Defendant Andrew Weitkamp's motion to stay the action or alternatively dismiss Beard's civil conspiracy claim.[34] The Court now considers both motions.

## II. ABSTENTION

The Court begins with its December 30, 2025 memorandum opinion. There, Defendants BWI and Whittaker argued that the pending Arizona state court action paralleled the instant matter and that the circumstances marshalled towards abstention.[35] Despite this Court rejecting that argument,[36] Defendants Starfire and Andrew Weitkamp now re-raise the same points. But this time, Starfire suggests that "substantial progress" in the state action warrants a reassessment of this Court's prior Order: the filing of a motion for summary judgment seeking, in part, the dissolution of M&B.[37] According to Starfire, the resolution of that motion could deprive Beard of standing to pursue his claims. Therefore, abstention is now warranted. That is the

---

31 *Id.*
32 *See* Doc. 23.
33 Doc. 48.
34 Doc. 60.
35 *Beard v. Whittaker*, 4:25-CV-01427, 2025 WL 3765939, at *2-3 (M.D. Pa. Dec. 30, 2025).
36 *Id.*
37 Doc. 53, at 12.

only distinction between the arguments raised today versus a year ago. That is not enough.

As a threshold question, the Court has already made clear that, here, the state and federal matters are not sufficiently parallel for the purposes of abstention.[38] A new stateside motion for summary judgment does not change that analysis. Neither does Starfire's reference to *Zokaites Props., LP v. La Mesa Racing* for the proposition that a pending dispositive motion warrants a stay of federal action.[39] In *Zokaites*, the United States District Court for the Western District of Pennsylvania stayed a civil action pending the resolution of a concurrent bankruptcy proceeding and an appeal of state action.[40] But those concurrent proceedings were decidedly parallel, and the "dispositive motion" in question was a bankruptcy motion that, if granted, could *directly* stay the district court proceedings pursuant to the Bankruptcy Code.[41] None of those circumstances apply here, rendering *Zokaites* inapposite to the instant matter.

In sum, Defendants ask the Court to consider abstention on the same unavailing grounds offered before. The Court will not reassess the same arguments that it has already dismissed. Therefore, the motions to stay are denied.

---

38 *Beard*, 2025 WL 3765939 at *2.
39 Doc. 53, at 14; CIV.A. 11-259, 2011 WL 1900098, at *3 (W.D. Pa. May 19, 2011).
40 *Id.* at *1.
41 *Id.* at *4.

## III. MOTIONS TO DISMISS

### A. Personal Jurisdiction (Andrew Weitkamp)

As an initial matter, Andrew Weitkamp's motion requests dismissal only under Federal Rule of Civil Procedure 12(b)(6).[42] Any reference to personal jurisdiction under Rule 12(b)(2) is advanced through briefing.[43] Because the motion neglects to mention Rule 12(b)(2), Beard argues that the defense is waived.[44] While the parties focus on whether the objection is waived under the local rules, the Federal Rules of Civil Procedure just as easily answer this question.

Put simply, Rule 12(h)(1) states that "a party waives any defense listed in Rule 12(b)(2)-(5) by . . . failing to . . . make it by motion under this rule."[45] Even the most well-developed of arguments will not permit a court to transform a brief into a motion. Because Andrew Weitkamp has already filed a Rule 12(b) motion but failed to include a Rule 12(b)(2) defense, that defense is waived pursuant to Rule 12(h)(1). It is true that some courts have read "motion" to encompass both the motion *and* brief.[46] However, those cases arose in narrow circumstances, and none of them

---

42 Doc. 60.
43 *See* Doc. 61; Doc. 64.
44 Doc. 63, at 8-11.
45 Fed. R. Civ. P. 12(h).
46 *Stiles v. Chesapeake Appalachia, LLC*, 3:10-CV-2453, 2011 WL 13243761, at *2-3 (M.D. Pa. Jul. 29, 2011); *see also Cannon v. Moore*, 1:19-CV-01700, 2021 WL 11088571, at *3 n.2 (M.D. Pa. Jan. 21, 2021) (construing a general Rule 12(b) motion as a Rule 12(b)(6) motion in light of arguments made in subsequent briefings). At least one court has explained that this interpretation serves to avoid a potential conflict between Federal Rule of Civil Procedure 7(b) and Local Rule 7.5. *Stiles*, 2011 WL 13243761, at *2-3. *Stiles* explains that "[w]hile Fed. R. Civ. P. 7(b) states the motion should 'state with particularity the grounds for seeking the order,'

considered a wholesale omittance of a motion's gravamen.[47] Accordingly, the Court declines to extend that reasoning here. To do so would be to convert judicial leave to file a brief into an unjustifiable extension of motion deadlines. Instead, Rule 12(h)(1) is clear: certain Rule 12(b) defenses must be asserted in a motion or they are waived. By failing to assert his Rule 12(b)(2) defense properly, Andrew Weitkamp has waived it.

### B. Failure to State a Claim

Under Rule 12(b)(6), courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[48] and *Ashcroft v. Iqbal*,[49] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[50] The United

---

the [Local Rule] 7.5 allows the party filing the motion to file a *separate* brief providing the grounds for the order . . . . [t]o avoid possible tension between LR 7.5 and 7(b), the Court reads the word 'motion' in 7(b) to refer to both the motion *and* the brief. Otherwise the Local Rules would appear to allow the filing of motions that did not comport with 7(b), since motions filed in this district seldom contain the grounds for seeking the order . . . ." *Id.*

47 In *Stiles*, 2011 WL 13243761, the court considered Local Rule 7.5 in the context of an amended complaint that joined new plaintiffs. *Cannon*, 2011 WL 13243761, is more factually analogous to the extent that it considers a motion to dismiss. But there, the asserted motion referred to Rule 12(b) generally and not to a specific subsection. That is distinct from the instant matter, where the motion refers to a specific subsection, but subsequent filings brief on an entirely distinct, and additional, argument. It is one thing for the Court to use its discretion to narrow a more general claim for the sake of analysis; it is quite another for the Court to multiply one specific claim into several distinct claims on the basis of briefing alone. Insofar as the Court needs to construe Local Rule 7.5, it concludes that the plain text reaffirms that briefs and motions are not interchangeable.

48 550 U.S. 544 (2007).

49 556 U.S. 662 (2009).

50 *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[51]

### 1. Choice of Law

For a federal court sitting in diversity, the forum state's choice-of-law rules govern which state's substantive law will apply.[52] Pennsylvania's choice of law doctrine first asks whether parties have chosen the relevant law.[53] Here, neither Beard nor Defendants contest the applicability of Pennsylvania law.[54] Further, given that the parties cite only Pennsylvania law for their substantive arguments, they appear to implicitly agree that Pennsylvania law applies.[55] Therefore, the Court applies Pennsylvania law.

---

[51] *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

[52] *Budget Rent-A-Car Sys., Inc. v. Chappell*, 407 F.3d 166, 169-70 (3d Cir. 2005).

[53] *Assicurazioni Generali, S.P.A. v. Clover*, 195 F.3d 161, 164 (3d Cir. 1999).

[54] Doc. 53, at 16-17; Doc. 56, at 14.

[55] *Price v. Foremost Indus., Inc.*, 17-00145, 2017 WL 6596726, at *6 (E.D. Pa. Dec. 22, 2017) (applying Pennsylvania state law because "the parties appear to implicitly agree that Pennsylvania law applies, given that they cite no other state law in any of their findings").

### 2. Tortious Interference (Count I)

Starfire seeks dismissal of Beard's tortious interference claim.[56] In support, Starfire points to the complaint's failure to specify any existing contracts between M&B and clients.[57] Starfire also contends that at best, the alleged facts amount to nothing more than competitive activity protected by privilege.[58] The Court disagrees.

A claim for tortious interference with existing or prospective contractual relations requires a plaintiff to prove: (1) the existence of a contractual or prospective relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing or prospective relation; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct.[59]

As to the first element in a claim for interference with *existing* contracts, a plaintiff must identify a contractual relationship with a third party that was subjected to the alleged interference.[60] Courts look for a "definite, exacting identification" of this third party.[61] On the other hand, *prospective* contracts are "by definition, not as

---

56 Doc. 53, at 20-21.
57 *Id*. at 22.
58 *Id*. at 23.
59 *CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc.*, 357 F.3d 375, 384 (3d Cir. 2004) (quoting *Crivelli v. General Motors Corp.*, 215 F.3d 386, 394 (3d Cir. 2000)).
60 *Volunteer Firemen's Ins. Services, Inc. v. Fuller*, 1:12-CV-2016, 2012 WL 6681802, at *10 (M.D. Pa. Dec. 21, 2012).
61 *Id*. (citing *Square D Co. v. Scott Elec. Co.*, 2008 WL 2096890, at *4 (W.D. Pa. May 16, 2008)).

susceptible of definite, exacting identification."[62] Consequently, allegations of interference with prospective contracts require less specificity.[63] But a lower bar is still a bar—the Supreme Court of Pennsylvania requires something more than a "mere hope" of a future contract, and the pleadings must indicate a reasonable probability of a future contractual relationship.[64] Stated differently, plaintiffs must sufficiently show that based on the parties current dealings, a contract would have occurred but for defendants' conduct.

Consider two examples. In *Council for Educ. Travel, USA v. Czopek*, a nonprofit sued a former employee for misappropriating documents in service to her new employer.[65] The nonprofit only claimed interference with "clients and/or prospective clients," failing to identify anyone specifically.[66] This imprecision was

---

62 *Wolk v. Teledyne Indus., Inc.*, 475 F.Supp.2d. 491, 512 (E.D. Pa. 2007) (citing *Kelly-Springfield Tire Co v. D'Ambro*, 596 A.2d. 867, 871 (Pa. Super. Ct. 1991)).

63 *Cannella v. Brennan*, 2:12-CV-1247, 2014 WL 3855331, at *12 (E.D. Pa. Aug. 6, 2014) (stating that "[a]llegations of prospective contracts therefore require less specificity than existing contracts for purposes of intentional interference claims") (quoting *Fresh Made, Inc. v. Lifeway Foods, Inc.*, CIV.A. 01-4254, 2002 WL 31246922, at *12 (E.D. Pa. Aug. 9, 2002)); *see Salsberg v. Mann*, 310 A.3d 104, 115 (Pa. 2024); *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 471 (Pa. 1979) (defining a prospective contractual relation as "something less than a contractual right, [but] something more than a mere hope."); *Wurth Baer Supply Co. v. Strouse*, 627 F. Supp. 3d 422, 436 (M.D. Pa. 2022) ("[F]or tortious interference with prospective contractual relations claims, a plaintiff's failure to identify a potential contractual partner by name does not necessitate dismissal; the claim may proceed if supported by specific allegations about the universe of prospective counterparties and predicate actions indicating interference.").

64 *Thompson Coal Co.*, 412 A.2d at 471 (citing *Glenn v. Point Park College*, 272 A.2d 895, 898-99 (Pa. 1971)); *Advanced Power Sys., Inc. v. Hi-Tech Sys., Inc.*, CIV. 90-7952, 1992 WL 97826, at *11 (E.D. Pa. Apr. 30, 1992).

65 1:11-CV-00672, 2011 WL 3882474, at *1 (M.D. Pa. Sept. 2, 2011).

66 *Id*. at *6.

fatal to the nonprofit's interference claim regarding existing contracts.[67] The court then went on to dismiss the claim for interference with prospective contracts, noting that the complaint lacked "a single factual allegation that would allow the court to infer that a contractual relationship with a third party is reasonably probable."[68]

Similarly, in *Cannella v. Brennan*, the United States District Court for the Eastern District of Pennsylvania dismissed a claim for interference with existing contractual relationships. There, the complaint referred only to "various vendors" or "existing clients."[69] Without identifying "the existence of any specific contracts, or the type or nature of business relationships that were interfered with," the claim could not survive dismissal.[70] However, the court found that a claim for *prospective* contractual relationships could proceed given specific allegations that dozens of potential customers had cancelled appointments due to the defendants' interference.[71]

As to a claim of interference with *existing* contractual relationships, Beard has failed to plead sufficient facts. Like the plaintiffs in *Czopek* and *Canella* who relied on "clients and/or prospective clients"[72] and "various vendors,"[73] Beard's repeated

---

[67] *Id.*
[68] *Id.* at *7
[69] 2014 WL 3855331, at *1, 12.
[70] *Id.* at *12.
[71] *Id.* at *12-13.
[72] *Czopek*, 2011 WL 3882474, at *6.
[73] *Cannella*, 2014 WL 3855331, at *12.

references to "various" customers,[74] concrete plants,[75] contracts,[76] and relationships,[77] are insufficient. By failing to specifically identify any disrupted contractual relationship between M&B and a third party, Beard cannot satisfy the first element of the claim he pursues. Although Beard cites to a "consistent group of concrete companies,"[78] this label falls short of the "definite, exacting identification" that courts look for.[79]

However, prospective contractual relations are different. Here, the complaint identifies a group of eight to ten concrete processing plants that M&B previously worked with and submitted yearly bids to.[80] Beard also alleges M&B's intention to contract with this group, but failure to do so owing to the Defendants' interference.[81] Beard goes on to identify the extent of the Defendants' interference campaign, alleging inflated bids and false representations.[82] At the very least then, these factual pleadings indicate that potential customers were interested in M&B's services yet rejected offers due to the Defendants' conduct. By pleading "factual allegation[s] that would allow the [C]ourt to infer that a contractual relationship with a third party is reasonably probable," Beard is less similar to the nonprofit in *Czopek*, and more

---

74 Doc. 1, at 11.
75 *Id*. at 4.
76 *Id*. at 10.
77 *Id*.
78 *Id*. at 3.
79 *Wolk*, 475 F.Supp.2d. at 512 (citing *D'Ambro*, 596 A.2d. at 871).
80 Doc. 1, at 4.
81 *Id*. at 7-8.
82 *Id*.

like the plaintiff in *Canella*.[83] In *Canella*, that court refused to dismiss the prospective relations claim due to specific allegations that a group of customers decided not to engage the plaintiff's business after the defendant's actions.[84] By alleging the same, Beard has shown that M&B had more than a "mere hope" of a contractual relationship.[85] Beard has properly pleaded the first element of his tortious interference claim.

The only remaining substantive question asks whether the defendant's conduct was privileged or justified.[86] Starfire essentially argues that "wrongful means" for the purposes of an interference claim requires actionable conduct independent of the claim itself. Therefore, in the absence of any viable causes of action against Starfire, this element cannot be satisfied.[87] But these allegations—namely, that self-dealing entities improperly diverted value to a competing enterprise at Plaintiffs' expense[88]—undoubtedly constitute independently wrongful conduct.[89] For instance, courts have found an absence of privilege or justification

---

83 *Czopek*, 2011 WL 3882474, at *7.

84 *Cannella*, 2014 WL 3855331, at *13.

85 *Thompson Coal Co.*, 412 A.2d at 471 (citing *Glenn*, 272 A.2d at 898-99).

86 *CGB Occupational Therapy*, 357 F.3d at 384 (quoting *Crivelli*, 215 F.3d at 394).

87 Doc. 53, at 24.

88 Doc. 1, at 7-8.

89 Pennsylvania courts look to factors outlined by the *Restatement (Second) of Torts* for guidance on privilege or justification, including: "(a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties." Restatement (Second) of Torts § 767 (1979). Section 768 of the *Restatement (Second) of Torts* also notes that when a defendant is a competitor of the plaintiff, "wrongful means" are required to find

where the complaint gives rise to allegations of fraudulent misrepresentation,[90] fraud, commercial disparagement, defamation, or unfair competition.[91]

These acts need not present as an actual, asserted claim in the complaint.[92] It is not the role of the Court to assess every possible claim that may arise from Beard's allegations,[93] and as the Third Circuit has stated, this analysis is "laden with subjective value judgments that will rarely be answerable as a matter of law."[94] But needless to say, these pleaded facts are a far cry from the typical competitive practices contemplated by privilege.[95] Therefore, Beard has sufficiently alleged an

---

intentional interference of a prospective contractual relation. The Third Circuit has interpreted "wrongful means" to reflect conduct that would be "actionable for a reason independent from a claim of tortious interference itself." *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 215-16 (3d Cir. 2009); *see also Nat'l Data Payment Sys., Inc. v. Meridian Bank*, 212 F.3d 849, 858 (3d Cir. 2000); *CGB Occupational Therapy*, 357 F.3d at 389.

90 *Revzip, LLC v. McDonnell*, 3:19-CV-191, 2021 WL 11957921, at *4 (W.D. Pa. Jan. 7, 2021) ("[A] fraudulent misrepresentation can constitute a 'wrongful means' and thus fully satisfy the third element of a tortious interference claim").

91 *Sandoz Inc. v. Lannett Co., Inc.*, 544 F. Supp. 505, 516 (E.D. Pa. 2021) (finding an absence of privilege or justification due to allegations that could "give rise to independent causes of action for fraud, commercial disparagement, defamation, or . . . . unfair competition").

92 *Acumed*, 561 F.3d, at 219 (holding that plaintiffs do not need to "plead a separate cause of action" to establish the absence of privilege or justification).

93 *See Elioas Indus., Inc. v. Kissler & Co. Inc.*, 2:20-CV-01011, 2021 WL 2141509, at *7-8 (W.D. Pa. May 26, 2021).

94 *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 384 (3d Cir. 2016).

95 *Ecore Int'l, Inc. v. Downey*, 343 F. Supp. 3d 459, 503 (E.D. Pa. 2018) ("Although what is proper conduct in a given situation is not capable of being precisely defined, the central inquiry is whether the defendant's conduct is 'sanctioned by the rules of the game which society as adopted'") (quoting *Adler, Barish, Daniels, Levin & Creskoff v. Epstein*, 393 A.2d 1175, 1184 (Pa. 1978)). The Pennsylvania Supreme Court in *Adler* elaborated that privileged conduct can be understood as "the area of socially acceptable conduct which the law regards as privileged." *Adler*, 393 A.2d at 1184 (quoting Harper & James, The Law of Torts, § 6.11, at 510, 511).

absence of privilege or justification as to Starfire's conduct. With these two elements addressed, Beard has sufficiently pleaded the remaining elements.[96]

Finally, Starfire argues that the complaint only states a claim for tortious interference with *existing* relationships.[97] The argument proceeds that Beard's description of the claim as interference with *prospective* relationships constitutes an improper attempt to amend. However, where a plaintiff pleads only a general claim for tortious interference, courts may exercise discretion to narrow the claim in accord with the plaintiff's arguments.[98] While Beard's interference claim may be generally phrased, it is not explicitly grounded in *existing* contractual relations as Defendants suggest. Instead, the claim simply reads as "Tortious Interference with Contractual Relations." The Court consequently exercises its discretion to interpret this general claim pursuant to Beard's arguments, understanding that pleadings require an entitlement to relief—not a perfectly stated legal theory.[99] Beard's imperfect

---

[96] Defendants do not argue the second and fourth elements of a tortious interference claim: that (1) the purpose behind the alleged conduct was to harm Plaintiffs; and (2) ensuing harm or damage resulted.

[97] Doc. 58, at 5-8.

[98] *Stein v. City of Philadelphia*, No. 13-4644, 2013 WL 6408384, at *10 n.14 (E.D. Pa. Dec. 5, 2013). In *Stein*, a plaintiff pleaded a claim for "tortious interference with business" without specifying whether it applied to existing or prospective contracts. *Id.* at *10. The United States District Court for the Eastern District of Pennsylvania exercised its discretion to construe the claim as referring to prospective contractual relations given the plaintiff's arguments on a motion to dismiss. *Id.* at *10, n.14.

[99] *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014). The Court is not oblivious to the facial inconsistency in (1) permitting Plaintiffs to plead an interference with prospective contractual relations claim despite the general phrasing in the complaint; while also (2) refusing to consider Defendant Andrew Weitkamp's Rule 12(b)(2) challenge because he failed to assert it in a motion. To explain, the Court's discretion is stretched too far when a motion asserts a specific defense, but parties then seek relief on unasserted defenses. This discretion

phraseology will not bar his interference claim, and the Court therefore declines to dismiss it.

### 3. Civil Conspiracy (Count IV)

Next, both Defendants Andrew Weitkamp and Starfire seek dismissal of Beard's civil conspiracy claim.[100] First, they argue that because Beard's interference claim is improper, the civil conspiracy claim must be dismissed.[101] In the alternative, they argue that Beard fails to satisfy the heightened pleading requirements for claims grounded in fraud under Rule 9(b).[102] Finally, they cite to the intra-corporate conspiracy doctrine for the proposition that a corporation cannot legally conspire with its own agents.[103] If so, Beard's claim must be dismissed to the extent that he portrays the Defendants as constituting a single economic entity. The Court disagrees with each of these arguments.

"In Pennsylvania, 'to state a cause of action for civil conspiracy, the following elements are required: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose;

---

is considerably less tested when, for the purposes of analysis, the Court is presented with an ambiguously phrased general claim and then narrows it as necessary. Beard's interference claim presents more like the latter circumstance than the former.

100 *See* Doc. 53; Doc. 61.

101 Doc. 53, at 25-26; Doc. 61, at 14.

102 Doc. 53, at 26-27; Doc. 61, at 19

103 Doc. 53, at 27-28; Doc. 61, at 20-21.

and (3) actual legal damage.'"[104] Additionally, "[a]bsent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act."[105]

A plaintiff in a federal case pursuing a civil conspiracy claim grounded in fraudulent tortious interference must also comply with Rule 9(b) of the Federal Rules of Civil Procedure.[106] This means that a plaintiff must allege "the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation" by stating "the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged."[107] This "essentially requires Plaintiffs to allege the who, what, when, where, and how elements to state a claim arising in fraud."[108]

"Despite Rule 9(b)'s stringent requirements, … [the United States Court of Appeals for the Third Circuit] has stated that 'courts should be sensitive to the fact

---

104 *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003) (quoting *Strickland v. Univ of Scranton*, 700 A.2d 979, 987-988 (Pa. Super. Ct. 1997)).

105 *Deitrick v. Costa*, 4:06-CV-01556, 2015 WL 1606641, at *13 (M.D. Pa. Apr. 9, 2015) (citing *Goldstein v. Phillip Morris, Inc.,* 854 A.2d 585, 590 (Pa. Super. Ct. 2004)).

106 *See Rao v. Sleep Number Bed, Inc*., 24-3317, 2026 WL 1383488, at *3 (3d Cir. May 18, 2026) ("[W]hen [the] unlawful purpose [of an alleged civil conspiracy] is fraud, the heightened pleading standard of Rule 9(b) governs."); *see also Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) ("A claim that . . . is premised upon a course of fraudulent conduct . . . can implicate Rule 9(b)'s heightened pleading requirements").

107 *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

108 *Weske v. Samsung Elecs., Am., Inc.*, 934 F. Supp. 2d 698, 703 (D.N.J. 2013) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1422 (3d Cir. 1997)).

that application of the Rule prior to discovery may permit sophisticated defrauders to successfully conceal the details of their fraud.'"[109] "Accordingly, the normally rigorous particularity rule has been relaxed somewhat where the factual information is peculiarly within the defendant's knowledge or control."[110] "But even under a relaxed application of Rule 9(b), boilerplate and conclusory allegations will not suffice."[111]

The Court first considers the threshold question of whether the intra-corporate conspiracy doctrine applies. That doctrine holds that an entity cannot legally conspire with one who acts as its agent.[112] Defendants suggest that Beard frames all Defendants as operating as a singular corporate entity, thereby requiring dismissal of the civil conspiracy claim.[113] Whether the doctrine applies depends on the existence of an agency relationship between co-conspirators.[114] But this is a question of fact.[115] For those reasons, "the intra-corporate conspiracy doctrine [is]

---

[109] *Burlington Coat Factory*, 114 F.3d, at 1418 (citing *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 284 (3d Cir. 1992)).

[110] *Id.* (citing *Shapiro*, 964 F.2d at 285).

[111] *Id.*

[112] *Ziglar v. Abbasi*, 582 U.S. 120 (2017) ("an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy."); *see Garcia v. Cruz*, 2:25-cv-00440, 2025 WL 950386, at *3 (E.D. Pa. Mar. 28, 2025) ("the intracorporate conspiracy doctrine bars conspiracy claims involving only agents and their principals") (internal quotations omitted) (citing *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 769 (1984)).

[113] Doc. 53, at 28.

[114] *Santoro v. Chartwell Staffing Servs., Inc.*, No. 20-939, 2020 WL 12770852, at *2 n.2 (E.D. Pa. Aug. 3, 2020).

[115] *See Great Northern Ins. Co. v. ADT Sec. Servs., Inc.*, 517 F. Supp. 2d 723, 746 (W.D. Pa. 2007) (collecting cases) ("Ordinarily, the nature and extent of an agent's authority presents a question of fact for the jury.").

inappropriate to determine at the motion to dismiss stage, as it is a defense and requires a factual inquiry."[116] Therefore, the Court refuses to dismiss the civil conspiracy claim on that basis.

Defendants next argue that the claim must be dismissed because Beard has not pleaded any underlying tort. This analysis proceeds differently between Starfire and Andrew Weitkamp. As to Starfire, this argument is now unavailing for obvious reasons. Starfire relies on the impropriety of Beard's interference claim, which is the only tort claim pleaded against Starfire; given that Beard's interference claim is sufficiently pleaded, Starfire's derivative contentions on civil conspiracy fail. But no underlying tort action is pleaded against Andrew Weitkamp, which he claims mandates dismissal. In turn, Beard argues that "a plaintiff need not allege an underlying tortious claim against every co-conspirator."[117]

The Court agrees with Beard. Civil conspiracy is a "mechanism for subjecting co-conspirators to liability when one of their member[s] committed a tortious act."[118] Here, Beard pleads sufficient facts to show that Starfire, BWI, and Whittaker conspired to intentionally interfere with M&B's prospective contractual relationships. The Court has already determined that this claim of tortious

---

116 *Logan v. Salem Baptist Church of Jenkintown*, 10-cv-0144, 2010 WL 3364203, at *5 (E.D. Pa. Aug. 17, 2010).

117 Doc. 63, at 18 (citing *Tender Touch Rehab Servs., LLC v. Brighten at Bryn Mawr*, 26 F. Supp. 3d 376, 405 (E.D. Pa. 2014)).

118 *Smith v. Berg*, 247 F.3d 532, 539 (3d Cir. 2001) (quoting *Beck v. Prupis*, 529 U.S. 494, 503 (2000)).

interference is allowed to proceed. Further, Beard alleges that Andrew Weitkamp (1) had been involved with both M&B and BWI;[119] (2) conspired to submit inflated bids on behalf of M&B;[120] (3) conspired to submit more favorable bids on behalf of BWI;[121] and (4) convinced M&B customers that BWI would be a viable option for solicited services.[122] Because Beard may hold certain defendants liable for the underlying tort of contractual interference, the civil conspiracy claim may proceed on these grounds against all alleged co-conspirators—including Andrew Weitkamp.

Defendants' last arguments regarding Rule 9(b) are similarly unsuccessful. Beard has sufficiently pleaded each element of his civil conspiracy claim; among other things, Beard claims that multiple entities coordinated to appropriate M&B's business relations with the intent of devaluating the company.[123] To do so, these entities manipulated M&B bids and leveraged their status to raise BWI's profile for the 2023 season.[124] The complaint also alleges that Starfire was specifically formed to provide consulting services to BWI and funnel compensation directly to Weitkamp.[125] For Andrew Weitkamp's part, the complaint alleges his complicity in making false representations to prospective customers in furtherance of the fraud.[126]

---

[119] Doc. 1, at 6.
[120] *Id.* at 7.
[121] *Id.*
[122] *Id.*
[123] *Id.* at 7-8.
[124] *Id.* at 9.
[125] *Id.*
[126] *Id.* at 7-8.

In the end, M&B's valuation plummeted from millions of dollars to its mere liquidation value.[127] These facts support a plausible inference that both Andrew Weitkamp and Starfire participated in an active conspiracy to devalue M&B. To the extent that Defendants point to any failure to plead specific operational details, the Court accepts that many facts underlying Beard's claim are within the Defendants' knowledge. Under these circumstances, pleadings upon information and belief are permissible.[128] Therefore, Beard's civil conspiracy claim survives Defendants' motion to dismiss.

**4. Unjust Enrichment (Count V)**

Finally, the Court considers dismissal of Beard's unjust enrichment claim.[129] Unjust enrichment claims require the following pleaded elements: "(1) benefits conferred on defendant[s] by plaintiff[s]; (2) appreciation of such benefits by defendant[s]; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant[s] to retain the benefit without payment of value . . . ."[130] Unjust enrichment claims may be pleaded as an

---

[127] *Id.* at 9.

[128] *Burlington Coat Factory*, 114 F.3d at 1418 (citing *Shapiro*, 964 F.2d at 285).

[129] Although Andrew Weitkamp has briefed on dismissal of this count, he has neglected to move for dismissal in his motion. As discussed above, the Court will only consider motions to the extent that they are initially asserted. However, a motion under Rule 12(b)(6) is distinct from one brought pursuant to Rule 12(b)(2). A Rule 12(b)(6) challenge may be sought through motion even after a defendant's initial pleadings. However, the defendant must actually assert it. Because Defendant Andrew Weitkamp failed to do so, the Court declines to address Weitkamp's arguments at this time.

[130] *Hollenshead v. New Penn Financial, LLC*, 447 F. Supp. 3d 283, 292 (E.D. Pa. 2020) (citing *Durst v. Milroy Gen Contracting, Inc.*, 52 A.3d 357, 360 (Pa. Super. Ct. 2012)).

alternative to a breach of contract claim, or as a companion to an underlying tort claim.[131] As a companion claim, the unjust enrichment action will "rise or fall with the underlying claim."[132] In either case, whether as an alternative or companion claim, certain principles apply: for one, Pennsylvania law does not require *direct* conferral of benefits upon the defendant. Indirect conferral can support an unjust enrichment claim "as long as the alleged benefit is not too attenuated to support equitable relief."[133] Furthermore, unjust enrichment actions turn on the "particular factual circumstances of the case at issue,"[134] and courts assess whether it "would be unconscionable for [the defendant] to retain" the benefits.[135]

Starfire advances three arguments supporting dismissal. Two of them are easily addressed. First, Starfire argues that the unjust enrichment action is derivative of an improper tort claim.[136] It is true that Beard does not pursue the claim as an alternative to a breach of contract action. So, the unjust enrichment action depends on the viability of a well-pleaded underlying claim.[137] However, because Beard

---

131 *Ortiz v. Keystone Premier Settlement Servs., LLC*, 3:23-CV-01509, 2025 WL 1710241 (M.D. Pa. Jun. 18, 2025) (citing *Seplow v. Closing Pro, Inc.*, CV 23-3628, 2024 WL 649260, at *4 (E.D. Pa. Feb. 15, 2024)).

132 *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 493 (E.D. Pa. 2016).

133 *Salvitti v. Lascelles*, 578 F. Supp. 3d 712, 724 (E.D. Pa. 2022) (quoting *Aetna Inc. v. Insys Therapeutics, Inc.*, 324 F. Supp. 3d 541, 559 (E.D. Pa. 2018)).

134 *Id.* (citing *Hollenshead*, 447 F. Supp. 3d at 292).

135 *Id.*

136 Doc. 53, at 25-26.

137 *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 936-37 (3d Cir. 1999) ("We can find no justification for permitting plaintiffs to proceed on their unjust enrichment claim once we have determined that the District Court properly dismissed the traditional tort claims . . . .").

sufficiently pleads his interference claim, the unjust enrichment action cannot be dismissed on that ground.

Next, Starfire quotes the complaint to argue that the unjust enrichment claim relies on "all the profits generated by doing business for M&B's former customers . . . ."[138] The argument proceeds that because unjust enrichment seeks restitution, the compensatory lost profits discussed in the complaint are unrecoverable. But this belies a close reading of the complaint: profits allegedly earned by Starfire and other Defendants are different from profits lost by Beard and M&B. The complaint targets the former—not the latter. To the extent that those profits were earned by independently wrongful means, they may properly be subject to restitution. Therefore, the Court will not dismiss Beard's claim on this ground either.

Starfire's final argument requires more attention. The argument supposes that because the complaint fails to allege any direct benefit conferred on Starfire, the claim must be dismissed.[139] Yet the Court reiterates that a claim of unjust enrichment

---

[138] Doc. 53, at 29-30.

[139] *Id.* at 29 (citing *Goldsmith Assocs., Inc. v. Del Frisco's Rest. Grp., LLC*, No. 09-1359, 2009 WL 3172752, at *3 (E.D. Pa. Oct. 1, 2009)). The Court notes that both parties cite the Eastern District of Pennsylvania case of *Goldsmith* as persuasive authority on this issue: Starfire uses it to suggest that courts have dismissed unjust enrichment claims predicated on indirect benefits, while Beard argues the case allows for the opposite. *Id.*; Doc. 56, at 24-25. Yet, *Goldsmith* is not as broad as either party would hope. In its own words, *Goldsmith* affirms that "*subcontractors* may not recover from owners on a theory of unjust enrichment unless (1) the owner requested the benefit or (2) the owner misled the *subcontractor*." *Goldsmith*, 2009 WL 3172752, at *5 (emphasis added). This emphasis on subcontractors is not a minor nuance—indeed, some courts have limited *Goldsmith* to "the narrow context" of unjust enrichment cases dealing with subcontractors in the construction industry. *Stout St. Funding LLC v. Johnson*, 873 F. Supp. 2d 632, 646 (E.D. Pa. 2012). *See Pro., Inc. v. Progressive Cas. Ins. Co.*, 3:17-CV-185, 2018 WL 10812141, at *7 n.12 (W.D. Pa. Feb. 26, 2018) ("However, the holding

does not require *direct* conferral of benefits. Indirect conferral of benefits will suffice "so long as the benefit is not too attenuated to support equitable relief."[140] And, "[t]he application of the doctrine depends on the factual circumstances at issue."[141] The question then becomes whether Beard has sufficiently shown an indirect benefit conferred on Starfire. He has.

Recall the allegations: the complaint alleges that Starfire was formed "to perform consulting services to BWI" and funnel compensation to Weitkamp "from BWI's activities without Weitkamp officially being an owner of BWI."[142] Starfire is similarly charged with knowledge of M&B's contracts and relationships, in part due to its formation by those affiliated with M&B.[143] Here, the relationship between M&B and Starfire is not so remote as to warrant dismissal. Taking the allegations as true and drawing all inferences in favor of Plaintiffs, it is plausible that Starfire benefitted at M&B's expense. Under the pleaded circumstances, it would be

---

from *Goldsmith Assocs.* is limited to cases involving unjust enrichment claims brought by contractors or subcontractors"); *see also Goldsmith*, 2009 WL 3172752, at *5 (justifying the rule in the context of the construction industry, explaining that "[a] contrary rule allowing subcontractors to recover directly from owners in other circumstances would destroy the balance of contractual relationships in the construction industry and reverse the public policy of Pennsylvania as articulated by the Supreme Court"). The Court sees no reason to transform *Goldsmith*'s narrow exception into a rule. Because the case presented before this Court is factually distinct, *Goldsmith* is inapposite.

140 *Salvitti*, 578 F. Supp. 3d at 724 (quoting *Aetna*, 324 F. Supp. 3d at 559).

141 *Id*. (quoting *Hollenshead*, 447 F. Supp. 3d at 292).

142 Doc. 1, at 9.

143 *Id*. at 6, 10.

"unconscionable for [Starfire] to retain" these benefits.[144] This unjust enrichment claim is therefore facially plausible, and the Court declines to dismiss it.[145]

## IV. CONCLUSION

For the reasons set forth above, Defendants' Starfire and Andrew Weitkamp's motions to stay or alternatively dismiss are denied, and these Defendants shall be directed to docket answers to the Complaint.

An appropriate Order follows.

BY THE COURT:

s/ Matthew W. Brann
Matthew W. Brann
Chief United States District Judge

---

[144] *Greenwald Caterers Inc. v. Lancaster Host, LLC*, 599 F. Supp. 3d 235, 262 (E.D. Pa. 2022) (quoting *Mark Hershey Farms, Inc. v. Robinson*, 171 A.3d 810, 817 (Pa. Super. Ct. 2017)).

[145] Beard also cites to allegations that "Whitaker, BWI, and Starfire have been unjustly enriched by . . . transferring the value from M&B" and "keeping all the profits generated by doing business from M&B's former customers to Beard's detriment." Doc. 1, at 13-14. But these allegations are conclusory and cannot support Beard's claim. Regardless, his claim still survives dismissal without them. *Burlington Coat Factory*, 114 F.3d, at 1418 (citing *Shapiro*, 964 F.2d at 285).